UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CARRIE W.,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:18-CV-3126-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

## JURISDICTION

Carrie W., Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) on July 26, 2011. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on November 6, 2013, before Administrative Law Judge (ALJ) M.J. Adams. On January 21, 2014, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision and Plaintiff sought judicial review. On June 13, 2016, U.S. Magistrate Judge John T. Rodgers in 1:15-CV-3134-JTR granted a stipulated motion to remand for further administrative proceedings (ECF No. 27).

A new administrative hearing was held on October 4, 2017. Plaintiff testified

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 1**

at this hearing, as did Vocational Expert (VE) Beckie Hill. On May 11, 2018, ALJ Adams issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff alleges disability beginning September 9, 2010, on which date she was 43 years old, and ending August 2, 2014, on which date she was 47 years old. Plaintiff's date last insured for Title II SSDI benefits is December 31, 2017. Plaintiff has past relevant work experience as a gambling dealer and dealer manager.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues: 1) the ALJ erred in failing to find Plaintiff has severe medically determinable fibromyalgia and mental health impairments; 2) the ALJ failed to offer specific, clear and convincing reasons for discounting Plaintiff's testimony regarding her symptom and limitations; and 3) the ALJ improperly weighed the medical evidence.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 3**

and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 4**

burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) during the alleged closed period of disability, Plaintiff had "severe" medical impairments, those being spinal impairment, thyroid disorder, hypertension and obesity; 2) Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except she needed to avoid concentrated exposure to extreme cold and hazards such as working around dangerous moving machinery or unprotected heights; 4) Plaintiff was capable of performing her past relevant work and alternatively, there were other jobs existing in significant numbers in the national economy which the Plaintiff was capable of performing, including fast food worker, cashier II, and conveyor line bakery worker. Accordingly, the ALJ concluded the Plaintiff was not disabled during the alleged closed period of disability.

**SEVERE IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 404.1520(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 404.1508.

Step two is a *de minimis* inquiry designed to weed out non-meritorious claims

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 5**

at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987) ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005), citing S.S.R. No. 85-28 (1985). An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." *Id*.

### A. Fibromyalgia

While the ALJ found Plaintiff had mental health impairments which were medically determinable, although not severe, the ALJ found Plaintiff did not suffer from medically determinable fibromyalgia. According to the ALJ:

> In March 2012, [Plaintiff] told her pain clinic that she had now been diagnosed with fibromyalgia. No such diagnosis exists in the evidentiary record, which does not contain any adequate documentation of positive fibromyalgia points or any consultation by a rheumatologist. In

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6**

> July 2012, the claimant was nonetheless prescribed Lyrica for fibromyalgia. She denied having pain during medical care in May 2013. An examination in April [2014] noted fibromyalgia tender points, but did not quantify these points or otherwise confirmed that they [were] positive in all four quadrants of the claimant's body. Furthermore, the claimant had no other reports of concurrent symptoms at this time that would amount to a diagnosis of fibromyalgia as required under the diagnostic criteria established by the American College of Rheumatology in 1990 or 2010. Notably, the claimant was gainfully employed for several years after the alleged onset of fibromyalgia in 2007, including after her alleged period [of] disability between September 2010 and August 2014. Her work with a casino appears to have ended in mid-2010 and again in September 2016 for reasons unrelated to her physical functioning.

(AR at pp. 603-04).[1]

Plaintiff was seen by Vern D. Commet, ARNP (Advanced Registered Practice Nurse), at Water's Edge Pain Clinic in February 2012, at the request of Plaintiff's treating provider, Rex Quaempts, M.D.. Plaintiff told Commet she had been told she may have fibromyalgia. He noted she was currently taking no medication for treatment of fibromyalgia. (AR at p. 476). On examination, Commet observed the following:

> Palpation of the sacrum is exquisitely painful bilaterally. She has tenderness as well with palpation of the trochanteric bursa bilaterally. She has palpatory tenderness of the medial fat pads of the knee bilaterally. She has positive palpation of the sternomastoid muscle anteriorly bilaterally, the suboccipitals bilaterally, the mid upper trapezius bilaterally, and the origin of the supraspinatus bilaterally.

(AR at p. 477).

This appears to show at least 11 positive tender points on each side of the body, both above and below the waist, which is one of the three 1990 America College of Rheumatology (ACR) criteria set forth in Social Security Ruling (SSR) 12-2p for determining whether fibromyalgia is a medically determinable impairment.

---

[1] Citations omitted.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 7**

Therefore, it is insignificant that Plaintiff's April 2014 musculoskeletal examination at the pain clinic merely noted the fibromyalgia tender points without quantifying them or confirming they were positive in all four quadrants of the body. (AR at p. 1136). While Commet did not specifically diagnose fibromyalgia in conjunction with his February 2012 examination, he effectively accepted it as a diagnosis, noting Plaintiff might "benefit from neuroleptics from a chronic pain standpoint and fibromyalgia," that he would recommend a rheumatologic workup, and that she might do better on Lyrica, a drug often prescribed for fibromyalgia pain. https://www.webmd.com/fibromyalgia/guide/lyrica-for-fibromyalgia-treatment#1. (AR at p. 477). In conjunction with Plaintiff's July 2012 examination, Commet left no doubt he believed Plaintiff suffered from fibromyalgia, noting that Dr. Quaempts had placed her on Lyrica. (AR at p. 471).[2] Dr. Quaempts, an "acceptable medical source" as a licensed physician[3], concluded Plaintiff had fibromyalgia based on what ARNP Commet reported. (AR at pp. 563-64).[4]

The Commissioner concedes the ALJ found there was evidence Plaintiff suffered from "widespread pain," the first of the 1990 ACR criteria, but contends the

---

[2] Commet never wavered from that assessment in his subsequent examinations of the Plaintiff. (AR at pp. 461 and 469).

[3] For claims filed prior to March 27, 2017, ARNPs were not considered "acceptable medical sources" to establish the existence of an impairment. 20 C.F.R. §404.1513(d)(1).

[4] As far back as September 2011, Dr. Quaempts thought it "most likely" that Plaintiff had fibromyalgia. (AR at p. 452).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 8**

third of the criteria was not met in there was no evidence of exclusion of other disorders that could cause the symptoms or signs of fibromyalgia. The ALJ did not cite this as a reason for concluding Plaintiff did not have medically determinable fibromyalgia and in any event, the evidence reasonably indicates that Dr. Quaempts referred Plaintiff to the pain clinic to confirm whether Plaintiff had fibromyalgia and to rule out other reasons for Plaintiff's widespread pain. That is precisely what happened.[5]

Plaintiff's fibromyalgia is established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. There is not medical evidence "clearly" establishing otherwise. The ALJ erred in finding Plaintiff's fibromyalgia is not a medically determinable impairment. He essentially relied on his own opinion whether Plaintiff's fibromyalgia was medically determinable without seeking a consultative rheumatologic examination of Plaintiff or the opinion of an independent medical expert.[6]

Because the ALJ found Plaintiff's fibromyalgia to not be a medically determinable impairment, he could not have considered its effects on Plaintiff's RFC because he was only obligated to consider the effects of medically determinable severe and non-severe impairments. SSR 12-2p, Paragraph VI. D., citing SSR 96-8p (2012 WL3104869 at *6). Likewise, there is not medical evidence "clearly"

---

[5] Because the 1990 criteria were met, it is unnecessary to address whether the 2010 ACR Preliminary Diagnostic Criteria, as set forth in SSR 12-2p, were also met.

[6] None of the state agency physicians who reviewed the record offered any opinion about fibromyalgia.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

establishing that Plaintiff's fibromyalgia is non-severe, that it is a "slight abnormality" that does not significantly limit any basic work activity. Plaintiff's treating doctor, Dr. Quaempts, clearly believed the condition significantly affected Plaintiff's ability to perform basic work activity during the relevant period of time. (AR at pp. 563-64). That Plaintiff may have already been suffering the effects of fibromyalgia while she was working and before the alleged onset date of her closed period of disability (September 9, 2010) is not medical evidence establishing that she did not have severe, medically determinable fibromyalgia during her alleged closed period of disability.

On remand, the Commissioner will consider whether Plaintiff's fibromyalgia causes any exertional and non-exertional limitations beyond those already found, or exacerbates any of limitations already found, which may lessen Plaintiff's physical RFC.

### B. Mental Health Impairments

In his decision dated May 11, 2018, the ALJ found Plaintiff's mental health impairments were not "severe," reasoning as follows:

> Contrary to her allegations of psychological disability, the claimant's records (along with her testimony) indicate that her mental health issues were ongoing for years prior to her departure from employment in mid-2010. Her examination findings and treatment records do not document any significant worsening of her depression or anxiety following her alleged onset date.

(AR at p. 604).

In his decision dated January 21, 2014, the same ALJ, based on his review of much of the same evidence (e.g., November 16, 2011 consultative psychological examination of Jay M. Toews, Ed. D., AR at pp. 413-16), found Plaintiff's "severe" impairments included depression, post-traumatic stress disorder, and a history of substance abuse. (AR at p. 21). The ALJ found that Plaintiff had a mild restriction

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 10**

concerning activities of daily living, mild difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and had experienced one to two episodes of decompensation of extended duration. (AR at pp. 22-23). He noted that in May 2013, the Plaintiff attempted suicide with prescription medications and was hospitalized. He determined the Plaintiff was depressed from being unemployed and having marital and financial problems. (AR at p. 23). The ALJ accepted the assessment of state agency physician, Jerry Gardner, Ph.D., who reported on February 22, 2012, that Plaintiff's mental impairments had resulted in these functional limitations, with the exception of the episode of decompensation found by the ALJ. (AR at p. 23; pp. 79-80).

In his May 11, 2018 decision, the ALJ reversed himself, stating the Plaintiff's "suicide attempt in mid-2013 appears to have been an impulsive act of anger rather than an expression of severe depression." (AR at p. 606). This time around, he gave "some weight" to Dr. Gardner's assessment, noting Dr. Gardner opined that Plaintiff "had no limitations in her understanding, memory, or social interaction" and that Plaintiff "was capable of sustaining simple work activity and could tolerate simple adjustments to change." (AR at p. 609; pp. 83-84).

In his January 21, 2014 decision, the ALJ found that Plaintiff's mental RFC included understanding, remembering and carrying out simple instructions required of unskilled work; that she could make judgments on simple work-related decisions; that she could respond appropriately to supervision and co-workers; that she could deal with occasional changes in the work environment; and although she had no difficulty dealing with the public, she could not perform in a high pressure environment such as a casino. (AR at p. 24).

In his May 11, 2018 decision, the ALJ found Plaintiff's "reportedly longstanding psychological impairments were concurrent with gainful employment in semi-skilled occupations [gambling dealer and dealer manager] immediate[ly]

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

before and immediately after her alleged period of disability" and that her treatment records indicated these impairments were adequately controlled with treatment started just a few months before this period, despite some concurrent alcohol abuse. (AR at pp. 609-10). The ALJ concluded Plaintiff had "no psychological limitations during the relevant period," but that "[e]ven if limited to unskilled work with simple instructions, simple work-related decision[s], and occasional work setting changes, [Plaintiff] could perform work in the national economy according to vocational expert testimony." (AR at p. 610). The ALJ noted that in November 2013, he asked the VE who testified at that hearing (Ann M. Jones) whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity, "with some additional psychological limitations." The VE testified such an individual would be able to perform the requirements of representative occupations such as fast food worker, cashier II, and conveyor line bakery worker. (AR at p. 618).

The ALJ cannot have it both ways: either the Plaintiff had psychological limitations during the alleged closed period of disability or she did not. There is not substantial evidence in the record supporting the ALJ's determination that Plaintiff had "no psychological limitations" during the relevant period and indeed, this is established by the ALJ's reliance in his May 11, 2018 decision on the VE's testimony from the November 2013 hearing which was based on psychological limitations arising from "severe" mental impairments found by the ALJ in his January 21, 2014 decision. The ALJ erred in finding Plaintiff did not suffer from "severe" mental impairments during the alleged closed period of disability. Medical evidence does not "clearly" establish otherwise.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

"the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id*. But even when those "rare circumstances"

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 13**

exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id*. at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

The ALJ erred in failing to find that Plaintiff suffered from "severe" medically-determinable fibromyalgia and "severe" mental impairments during the alleged closed period of disability. There are, however, outstanding issues which remain to be resolved, in particular the impact of Plaintiff's fibromyalgia upon her physical RFC. And although the existence of "severe" mental impairments, by the ALJ's own rationale, precludes Plaintiff from performing her past relevant work, this court makes no finding at this time whether substantial evidence supports the ALJ's conclusion that Plaintiff is capable of performing other unskilled work in the national economy. The Plaintiff's testimony, and the testimony of her lay witnesses, needs to be reassessed, and the medical opinions re-evaluated in light of the fact that Plaintiff suffered from "severe" medically determinable fibromyalgia and "severe" mental health impairments during the alleged closed period of disability.

The court recognizes this matter has already been remanded once for further proceedings before the same ALJ, but that was pursuant to stipulated remand which did not identify any particular errors on the part of the ALJ and provided only very general guidance regarding what was to occur on remand. Because there is conflicting evidence regarding the extent of Plaintiff's physical and mental limitations and how they impact her ability to perform other work in the national economy, and not all factual issues have been resolved, the court will order a remand for further proceedings consistent with this opinion.

The court recommends the Commissioner assign a different ALJ to hear the case on remand since the same ALJ has already reviewed the evidence twice. See *Harris v. Barnhart*, 219 F.Supp.2d 966, 977 and n. 5 (E.D. Wis. 2002), citing *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)(recommending assignment to different

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 14**

ALJ on remand where, among other things, ALJ relied on his own unsupported medical opinions about plaintiff's conditions).

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 15) is **DENIED**. Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___11th___ day of March, 2019.


*s/Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 15**